IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JESÚS COLÓN ANABITARTE,

Plaintiff

v.                                                    CIVIL 06-2131 (JAG)

FRITO LAY QUAKER PUERTO RICO,

Defendant

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.  FACTUAL AND PROCEDURAL BACKGROUND

Jesús Colón Anabitarte (hereinafter Colón) was hired by Frito Lay Quaker Puerto Rico (hereinafter Frito Lay) as a temporary salesperson on January 12, 1987.  (Docket No. 45-2, at 18.)  Colón worked for the company without interruption for approximately 18 years during which he occupied various positions.  (Docket No. 57-2, at 1, ¶ 1.)  Throughout his employment Colón received evaluations ranging from on target, above target and distinguished, as well as numerous salary increases.  (Id. ¶ 2.)

During his tenure at Frito Lay, Colón suffered from diabetes and hypertension.  (Id. at 2, ¶ 6.) The company was informed of this condition.  (Id.) As a result of his disease, Colón had a complication known as diabetic retinopathy.  (Id. ¶ 7.)  In March of 1998 Colón suffered a hemorrhage which left him barely able to see.  (Id.)  During the period between March of 1998 and May of 1998

CIVIL 06-2131 (JAG)                    2


Colón was instructed by his doctor to keep his sugar under control and to be careful in the street since his vision was not good.  (Docket No. 45-11, at 6:15-17.)

On June 1, 1998 Colón had surgery on one eye, then after recovering for a month had surgery on his second eye.  (Id. at 32:19-25; at 33:2-6.)  After his two surgeries Colón returned to work having regained one hundred percent of his vision.  (Id. at 35:23-25; 36:1-15.)  However, Colón's perfect vision was short lived; he began to develop cataracts due to his diabetes around October of 1998 and by November 1998 (three months after his vision was restored) he required prescription glasses.  (Id. at 36:16-23; 37-39.)   Despite his cataract problem Colón was able to perform daily life activities with minor adjustments.  (Id. at 43:7-12.)  Colón informed his immediate supervisor (Carlos Lewis Rivera), and another supervisor (Wilson Comas) about his cataracts problem.  (Id. at 40-41.) In May of 2005 Colón underwent a second eye surgery to correct the problems with his cataracts.  (Id. at 44:17-24.)  As a result of the surgery Colón once again regained one hundred percent of his vision.  (Id. at 46:10-13.)  Since the surgery, Colón has not had any vision problems.  (Id. at ll. 14-17.)

One of Colón's duties as district sales manager was to do at least 15 ride alongs per year with the salespeople he supervised.  (Id. at 47:13-15.)  Prior to his retinopathy condition (March 1998) Colón was able to perform the ride alongs

CIVIL 06-2131 (JAG)                    3

without a problem.  (Id. at 51-52.)  However, after returning from his operation in August 1998 Colón was unable to tolerate the ride alongs due to the high temperature inside the delivery trucks.  (Id.)  Colón spoke to his supervisor about the problem and was told he could do the ride alongs in his private vehicle.  (Id. at 52:6-10.)   However when Wilson Comas became the director of sales, he stated that Colón had to do all ride alongs in the delivery trucks.  (Id. at ll. 13-14.)  Colón brought in a medical certificate stating that he could not do the ride alongs in the delivery trucks, and continued to do the ride-alongs in his own car. (Id. at 53-57.)  According to Colón in January of 2005 he was once again told (this time by his then supervisor Alexander Pagán) that he could no longer perform the ride alongs in his private vehicle.  (Docket No. 57-2, at 3, ¶ 9.)  Nonetheless, Colón continued to do the ride alongs in his private vehicle and was never formally disciplined or penalized for doing so.  (Docket No. 45-11, at 58:5-7.)

In addition to the issues with his eyes Colón also has an undiagnosed speech problem.  (Docket No. 45-12, 4:1-5.)  Although Colón usually speaks normally, when he becomes a little nervous his speech problem leads him to stutter and his words to become entangled.  (Id. at 5:14-22.)  Colón usually stutters when he is in a meeting, making a presentation, or talking to clients.  (Id. at 6:1-4.)  Colón is able to avoid the stuttering if he thinks through what he is about to say before he says it.  (Id. 7:7-8.)  While he claims that this condition affects him in his daily

CIVIL 06-2131 (JAG)                    4

life, Colón has never seen a doctor about it, does not consider it a medical condition, and does not "feel handicapped". (Id. at 8-9.).

Colón claims that he was constantly subjected to harassment, jokes, and mockery in the workplace because of his speech and visual disabilities. (Docket No. 57-2, at 3, ¶ 10.) Colón attests that the sales director, Luis Padua, stated Colón could not perform the functions of his job because of the way he spoke. (Docket No. 45-12, at 11:17-25.) Colón further asserts that Padua made fun of him in the presence of salespeople before and after learning of his speech condition. (Id. at 14:20-24; at 15-17.) Colón also claims Padua would not allow him to finish presentations during manager's meetings. (Id. at 23:8-25; at 24-27.) Colón notified his immediate supervisor Danny Rodríguez of Padua's harassment. (Id. at 18:3-4.) Rodríguez did not say anything in response to Colón's complaint, and Colón never made a formal complaint at the office of human resources related to the harassment. (Id. at 18:18-25; at 19:18-24.)

At some point in 1996 the manager of the key accounts, Richard Valdés, informed Colón that he was being transferred to the position of district sales manager in the Guaynabo office. (Id. at 32:11-24; at 33:5.)

According to Colón after the 1996 transfer the joking about his speech continued during manager's meetings which occurred once a month. (Docket No. 45-12, at 42;12-25; at 43.) Colón spoke with human resources sales manager

CIVIL 06-2131 (JAG)                     5

Luis Noriega on a couple of occasions about being made fun of due to his speech impediment.  (Id. at 43:14-25.)  After Noriega left Frito Lay in 2003 Colón spoke to his immediate supervisor Alexander Pagan about the harassment.  (Id. at 49:1-14 )  However, the mockery continued unabated until Colón's termination in September of 2005.  Id.  Colón claims that the joking and mocking situation affected him mentally and psychologically but he never sought psychological help.  (Id. at 50:18-23.)  Colón also never considered taking an action outside Frito Lay like in the EEOC or in the Anti-Discrimination Unit, although he was aware of his right to file a complaint with these agencies.  (Id. at 54:16-25; at 55:1.)  Colón was also aware of Frito Lay's anti-discrimination and anti-harassment policies.  (Id. at 56:8-13.)

On February 9, 2005 after visiting a client in Saint Just, Panadería Barcelona from approximately 7:00 p.m. to 7:30 p.m., Colón encountered a woman by the name of Luz Ortega Berdecía. (Docket No. 45-13, at 2, 5.)  Colón asked Ortega for a drink of water and went to her house.  (Id. at 5-6.)  While in the house Colón heard Ortega screaming at which point he ran out of the house to find his car on fire.  (Id. at 9:22-25.)  Police and fire fighters came and made a report of the incident.  (Id. at 10:16-17.)  After speaking to police Colón called his immediate supervisor (Alexander Pagán) and left a message informing him that the car had been burnt while Colón was working.  (Id. at ll. 19-22.)

CIVIL 06-2131 (JAG)                    6

Frito Lay has a written policy to claim for damages caused by an accident to a motor vehicle of supervisors, such as Colón.  (Docket No. 45-14, at 18, Docket No. 45-15, at 1.)  In the event that an accident is caused by a third party, and the accident occurs during working hours, Frito Lay covers one hundred percent of the damages to the vehicle. (Docket No. 45-14, at 15:14-25; at 16; Docket No. 45-15, at 1.)  However, if the accident occurs within working hours, Frito Lay will pay the amount over the $500 deductible and the 20% depreciation cost of the vehicle. (Docket No. 45-14, at 16:9-11; Docket No. 45-15, at 1.)

Colón was interviewed on the day of the incident by Carlos Espada Mateo who subsequently prepared an incident report.  (Docket No. 45-13, at 13-14.)  In the incident report Mateo stated that Colón claimed somebody approached his vehicle with a yellow container and lit the container on fire before leaving.  (Id. at 14:7-14.) Colón later contacted agent Espada Mateo and asked him to add to the report that Colón was working at the time his car was incinerated.  (Docket No. 45-13, at 17:4-10.)

The day after Colón's truck was set on fire he met with supervisor Alexander Pagán to explain the incident.  (Docket No. 45-13, at 204.)  Two weeks later Colón met with Annette Román who is Frito Lay's Comptroller and is in charge of processing insurance claims. (Docket No. 57-2, at 6, ¶ 20.)  Colón gave Annette Román various documents to process his claim including:  the incident report, the

CIVIL 06-2131 (JAG)                              7

names of clients that he had visited that day, the value of his car, and various photos of the burnt car.  (Id.)  On June 14, 2005 Colón filled out an Automobile Accident Report which he then sent to Román.  (Docket No. 45-13, at 25.)  In the incident report Colón stated that he had been supervising clients and afterward found his car in flames as he walked towards it.  (Id. at 26:21-24.)  At a later date while meeting with Annette Román, Colón mentioned that he was going to speak with the vehicle manufacturer to see whether the vehicle had a defect that may have caused the fire. (Docket No. 45-14, at 24:8-10.)   Román noticed the discrepancy between the report which stated Colón witnessed an individual torch his vehicle, and Colón's suspicion that there may be a manufacturing defect.  (Id. at ll. 12-14.)  Román requested assistance from the human resources office to determine if the incident had occurred during work hours, and in turn which part of Frito Lay's policy applied.  (Id. at 9:6-25.)  Roman further explained to the human resources department that she thought the case was out of the ordinary and that their intervention may be necessary to determine whether there was an issue with the code of conduct, possibly a conflict of fraud.  (Id. at 7:1-5; at 6:16-18; at 5:8-22.)

A private detective was hired by Frito Lay to analyze and determine the validity of Colón's claim.  To the best of Román's knowledge this is the first time a private investigator had ever been hired to investigate a claim.  (Id. at 4:25; at

CIVIL 06-2131 (JAG)                        8

3:1.) Colon was not interviewed as part of the investigation.  (Docket No. 57-2, at 8, ¶ 28.)  The detective determined that at the time the incident occurred Colón had not been working.  Id.

Subsequent to the investigation Nicolas Bahamon (general manager) and Julio Justo (human resources manager) decided to terminate Colon from his employment with Frito Lay. (Docket No. 45-2, at 21-22.)  On September 6th, 2005, a meeting was held between Alexander Pagán, Víctor Hernández and Colón during which Colón was read a termination letter and given a copy.  (Docket No. 45-13, at 29-30.)  After Colón was terminated Hector Sánchez was assigned to perform Colón's duties until a permanent replacement could be found.  (Docket No. 45-2, at 23.)  Frito Lay claims that the decision to terminate Colón was based on his violation of the company's rules of conduct. Specifically Frito Lay claims Colón provided false information by claiming to have been working when in fact he was off duty.  (Id. at 21.)  Frito Lay asserts Colón provided them with this false information in order to receive reimbursement for the damages suffered as a result of his destroyed vehicle.  Id.  Colón however claims that this reason is pretextual.

II. SUMMARY JUDGMENT

i.  SUMMARY JUDGMENT STANDARD

CIVIL 06-2131 (JAG)                    9

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To succeed on a motion for summary judgment, the moving party must show that there is an absence of evidence to support the nonmoving party's position. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Once the moving party has properly supported [its] motion for summary judgment, the burden shifts to the nonmoving party, with respect to each issue on which [it] has the burden of proof, to demonstrate that a trier of fact reasonably could find in [its] favor." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997)).

The court must view the facts in a light most hospitable to the nonmoving party, drawing all reasonable inferences in that party's favor. Patterson v. Patterson, 306 F.3d 1156, 1157 (1st Cir. 2002) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)). A fact is considered material if it has the potential to affect the outcome of the case under applicable law. Nereida-González v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993). The court must determine whether either party is entitled to judgment as a matter of law on facts

CIVIL 06-2131 (JAG)                    10

that are not disputed.  Adria Int'l Group, Inc. v. Ferré Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001).

### ii.  LOCAL RULE 56

In the District Court of Puerto Rico, Local Rule 56(b), requires a motion for summary judgment to be accompanied by a separate, short and concise statement of material facts that supports the moving party's claim that there are no genuine issues of material fact in dispute.  These facts are then deemed admitted until the nonmoving party provides a similarly separate, short and concise statement of material facts establishing that there is a genuine issue in dispute.  Local Rules of the United States District Court for the District of Puerto Rico, Local Rule 56(e) (2004); Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 33 (1st Cir. 2001); Ruiz Rivera v. Riley, 209 F.3d 24, 27-28 (1st Cir. 2000); Domínguez v. Eli Lilly & Co., 958 F. Supp. 721, 727 (D.P.R. 1997); see also Corrada Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 43 (1st Cir. 2001).

Additionally, the facts must be supported by specific reference to the record, thereby pointing the court to any genuine issues of material fact and eliminating the problem of the court having "to ferret through the Record."  Domínguez v. Eli Lilly & Co., 958 F. Supp. at 727; see also Carmona Ríos v. Aramark Corp., 139 F. Supp. 2d 210, 214-15 (D.P.R. 2001); Velázquez Casillas v. Forest Lab., Inc., 90 F. Supp. 2d 161, 163 (D.P.R. 2000).  Failure to comply with this rule may result,

CIVIL 06-2131 (JAG)                    11

where appropriate, in judgment in favor of the opposing party.  <u>Morales v. A.C.</u>
<u>Orssleff's EFTF</u>, 246 F.3d at 33 (quoting <u>Stepanischen v. Merchants Despatch</u>
<u>Transp. Corp.</u>, 722 F.2d 922, 931 (1st Cir. 1983)); <u>see</u> <u>Ríos-Jiménez v. Principi</u>,
520 F.3d 31, 38-39 (1st Cir. 2008); <u>Guzmán-Rosario v. United Parcel Serv., Inc.</u>,
397 F.3d 6, 9 (1st Cir. 2005).

Defendant submitted its statement of uncontested material facts on
January 30, 2009.  (Docket No. 45.)  Accordingly, plaintiff submitted a statement
of material facts as to which he alleges there is dispute.  (Docket No. 57, dated
April 4, 2009.)  Parties have thus complied with the local anti-ferret rule.

III.  DISCUSSION

A.  Plaintiff's ADA discrimination claim

1.  Discrimination:  ADA and the McDonnell-Douglas Framework

The American's With Disabilities Act ("ADA") is a federal civil rights statute
the goal of which is "to provide a clear and comprehensive national mandate for
the elimination of discrimination against individuals with disabilities[.]" 42 U.S.C.
§ 12101(b)(1).

The McDonnell Douglas framework was developed by the Supreme Court to
evaluate a claim involving a violation of Title VII based on racial discrimination but
the framework has expanded to evaluate ADA based discrimination cases as well.
<u>See</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973); <u>see, e.g.</u>, <u>Katz v.</u>

CIVIL 06-2131 (JAG)                    12

City Metal Co., 87 F.3d 26, 30 n.2 (1st Cir. 1996).  The McDonnell Douglas framework essentially "established an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).

Under the McDonnell Douglas framework the plaintiff must first prove, by a preponderance of the evidence, a prima facie case of discrimination.  Jacques v. Clean-Up Group, Inc., 96 F.3d 506, 511 (1st Cir. 1996).

In order to establish a prima facie case of disability discrimination under the ADA, Colón must prove: "(1) that [he] was "disabled" within the meaning of the ADA;" (2) that he was a qualified individual; and "(3) that [he] was discharged or adversely affected [by Frito Lay,][1] in whole or in part, because of [his] disability." Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 82 (1st Cir.), cert. denied, 129 S. Ct. 180 (2008) (quoting Katz v. City Metal Co., 87 F.3d at 30); Orta-Castro v. Merck, Sharp & Dohme Química P.R., Inc., 447 F.3d 105, 111 (1st Cir. 2006); Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 104 (1st Cir. 2005).

*i.  Disability as Defined by the* ADA[2]

---

[1] Neither party disputes that Frito Lay is a covered entity under the ADA and I will assume without deciding that they meet the ADA criteria.

[2] Plaintiff urges the court to determine whether or not Colón qualifies as a disabled individual under the ADA pursuant to the September 2008 ADA Amendments Acts ("ADA AA") which Congress put into effect on January 1, 2009. Pub. L. No. 110-325 (2008).  The purpose of the amendments was to expand the

CIVIL 06-2131 (JAG)                    13


    As to the first element Colón asserts that he is disabled under the ADA for

both his speech condition, as well as his diabetes and subsequent vision problems.

Determining whether or not a plaintiff is disabled under the ADA must be done on

a case by case basis.  <u>Toyota Motor Mfg., KY., Inc. v. Williams</u>, 534 U.S. at 198.

    For purposes of the ADA, one is considered disabled if he: (a) has a physical

or mental impairment that substantially limits one or more of his major life

activities; (b) has a record of such an impairment; or (c) is regarded as having

such an impairment.  42 U.S.C. § 12102(1)(A)(B)(C).

    A tripartite analysis is used in order to determine if an individual has a

physical impairment that substantially limits one or more of his major life

_____

class of individuals who are protected under the ADA.  <u>Id.</u>  In order to broaden the
protected class the ADA AA expressly rejected the Supreme Courts interpretation
of the term "disability" in <u>Toyota Motor Mfg., Ky., Inc. v. Williams</u>, 534 U.S. at 198
and <u>Sutton v. United Air Lines</u>, 527 U.S. 471, 492 (1999).  However, I will not
apply the ADA AA to this case because the amendments do not apply
retroactively.  <u>Fournier v. Payco Foods Corp.</u>, 611 F. Supp. 2d 120, 129 (D.P.R.
2009).

    Since the ADA AA is a restorative or interpretive statute passed by Congress
the "intent to reach conduct preceding the 'corrective' amendment must clearly
appear."  <u>Id.</u> at 129 (quoting <u>Rivers v. Roadway Exp., Inc.</u>, 511 U.S. 298, 313
(1994)).  Because the text of the ADA AA fails to make any mention of
retroactivity it is not clear that Congress intended the ADA AA to apply
retroactively.  <u>Id.</u>  Further the ADA AA increases a party's liability for past acts by
expanding the category of those who may qualify as disabled under the ADA.  <u>Id.</u>
"In such a case, the "traditional presumption" applies to prevent retroactive effect
absent clear congressional intent.  <u>Id.</u> (citing <u>Landgraf v. USI Film Products</u>, 511
U.S. 244, (1994)).

CIVIL 06-2131 (JAG)                    14

activities, and is thus qualified as disabled under the ADA.  Bragdon v. Abbott, 524 U.S. 624, 631 (1998); Carroll v. Xerox Corp., 294 F.3d 231, 238 (1st Cir. 2002);. First Colón must show that he suffers from a physical or mental impairment. Carroll v. Xerox Corp., 294 F.3d at 238.  Second the court must evaluate the life activities affected by the impairment to determine if they constitute a "major" life activity.  Id.  Finally, "tying the two statutory phrases together, we ask whether the impairment substantially limits the activity found to amount to be a major life activity." Id. (quoting Lebrón-Torres v. Whitehall Labs., 251 F.3d 54, 55 (1st Cir. 2001)).

    The defendant maintains that Colón's speech problem does not qualify him as a disabled individual for the purposes of the ADA.  In support of this assertion the defendant offers, and plaintiff affirms, that Colón speaks normally when not nervous, and is able to avoid stuttering by thinking through what he is going to say before saying it.  (Docket No. 45-12, at 5:13-22.)  The defendant also offers, and plaintiff does not dispute, that Colón has never consulted a doctor about his condition, has no record of his impairment, and does not "feel handicapped". (Docket No. 45-12, at 11-13, 20-21.)   Meanwhile, plaintiff argues that his speaking ability was substantially limited by his stuttering.

    A "physical impairment" is any physiological condition affecting the neurological, musculoskeletal, special sense organs, respiratory (including speech

CIVIL 06-2131 (JAG)                    15

organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine.  29 C.F.R. § 1630.2(h)(1).  Assuming arguendo that Colón's stuttering is a physical impairment it is clear that the major life activity it would affect is his ability to speak.  The federal regulations provide a non-exhaustive list of what are to be considered major life activities; the list includes speaking.  Id.

While Colón has a physical impairment which affects a major life activity there remains an absence of evidence to demonstrate that a trier of fact could reasonably find Colón's speech impediment substantially limited his ability to speak.  To be substantially limiting the impairment must be one that "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.  The impairment's impact must also be permanent or long-term."  Toyota Motor Mfg., Ky, Inc. v. Williams, 534 U.S. at 198 (citing 29 C.F.R. § 1630.2(j)(2)(ii)-(iii) (2001)).  "[T]he ADA requires those 'claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial.'"  Toyota Motor Mfg., Ky, Inc. v. Williams, 534 U.S. at 198 (quoting Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 567 (1999)).

Colón offers no evidence that his speech impediment prevents or severely restricts his speaking ability.  By the plaintiff's own account he does not consider

CIVIL 06-2131 (JAG)                          16

the speech impediment a handicap, and no evidence is offered to show that in

Colón's experience the limitations of his speech impediment are substantial.  Thus

Colón has failed to provide sufficient evidence to allow a finder of fact to conclude

that he is disabled under the first prong of the ADA definition of disabled.

Colón argues alternatively that he was regarded as disabled due to his

speech impediment, and thus is disabled under the "regarded as" prong of ADA

definition of disabled.  There are two ways in which an employee can show that

he was regarded as disabled:

> (1) a covered entity mistakenly believes that a person
> has a physical impairment that substantially limits one or
> more major life activities, or
> (2) a covered entity mistakenly believes that an actual,
> nonlimiting impairment substantially limits one or more
> major life activities.

Sullivan v. Neiman Marcus Group, Inc., 358 F.3d 110, 117 (1st Cir. 2004)

(quoting Sutton v. United Air Lines, 527 U.S. 527 U.S. at 489).  The purpose

behind this provision is to avoid situations where an individual is "rejected from

a job because of the 'myths, fears and stereotypes' associated with disabilities."

Sutton v. United Sir Lines, Inc., 527 U.S. at 489-90 (quoting 29 C.F.R. pt. 1630,

App. § 1630.2(l)); Calef v. Gillette Co., 322 F.3d 75, 87 n.9 (1st Cir. 2003).

Plaintiff offers what can generously be considered a preponderance of

evidence to show that he was mistakenly regarded as disabled by Frito Lay

CIVIL 06-2131 (JAG)                    17

management  because of his speech impediment.  Plaintiff offers statements that he was made fun of and told he could not perform the functions of his job due to the way he spoke.  (Docket No. 45-12, at 11, 14-17.)  Plaintiff also offers the assertion that due to his speech impediment he was not allowed to participate in presentations.  (Docket No. 45-12, at 23-27.)

Taking this evidence in the light most favorable to Colón and making all inferences in his favor a reasonable fact finder could conclude that the decision to prevent Colón from speaking at presentations, and the mockery against him, were based on the belief that it was difficult if not impossible for Colón to speak normally.   If Colón was regarded as unable to speak normally it would be sufficient evidence to allow a reasonable fact finder to determine that he qualifies as a disabled individual under the ADA due to his speech impediment.

The defendant also denies that Colón's diabetic condition and subsequent vision problems qualify him as a disabled individual for the purposes of the ADA. In support of this defendant offers that after Colón's May 2005 surgery for his cataracts he recovered one hundred percent of his vision, and has not had any vision problems since then.  (Docket No. 45-11, at 44, 46:10-13.)  Meanwhile the plaintiff maintains his diabetes qualifies him as a disabled person because it is a physical impairment that substantially limits his ability to see.

CIVIL 06-2131 (JAG)                18

Diabetes is a physical impairment under the ADA because it is a physical condition affecting the digestive, hemic, and endocrine systems.  See Bragdon v. Abbott, 524 U.S. at 637 (asymptomatic HIV is a physical impairment because it causes immediate abnormalities in a person's blood).  Further diabetes is included in EEOC regulation guidelines on physical impairments.  24 C.F.R. § 9.103; 28 C.F.R. § 41.31(b)(1)(ii); 28 C.F.R. § 35.104(1)(i)(B)(ii); 29 C.F.R. § 34.2(1)(i)(B)(ii).

Relevant to this case is the fact that Colón's diabetes impairs his ability to see.[3]  Under federal guidelines major life activities include acts  "such as caring for oneself, performing manual tasks, walking, *seeing*, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(i) (emphasis added). Colón's physical impairment of diabetes impairs his ability to see and thus Colón suffers from a physical impairment which affects a major life activity.

Next I must determine whether Colón's diabetes is substantially limiting.[4] When analyzing whether Colón's vision problems were substantially limiting, I
_____

[3] Colón also asserts that his diabetes effects his ability to eat.  He however offers no evidence of this and never alleges he was discriminated against based on this impairment.  Thus it is irrelevant.

[4] The plaintiff urges the court to analyze this element without regard to ameliorative effects of mitigating measures which would be required under a ADA AA analysis.  However, as discussed, those amendments do not apply to this case since the events which gave rise to the case occurred prior to the amendments taking effect.

CIVIL 06-2131 (JAG)                         19

must take into account "[t]he nature and severity of the vision impairment; [t]he duration or expected duration of the impairment; and [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment."  29 CFR 1630.2(j)(2)(i)(ii)(iii).

Colón had vision complications twice due to his diabetes.  The fist vision problem was caused by a diabetic retinopathy in March of 1998 and left Colón barely able to see.  (Docket No. 57-2, at 2, ¶ 7.)  As a result driving was very risky for Colón and he was instructed to be careful on the street.  (Docket No. 45-11, at 6:5-17, 15.)  By August of 1998 Colón had fully recovered from this vision problem after two surgeries.  Colón's second vision issue began in October of 1998 when he began to develop cataracts.  (Docket No. 45-11, at 36-37.)  As a result of his cataract problem, Colón required prescription glasses but was still able to perform his daily life activities with minor adjustments.  (Docket No. 45-11, at 43.)  In May of 2005 Colón underwent another surgery which left him with one hundred percent of his vision.  (Docket No 45-11, at 45:23-25, 46:10-13.)

Colón's vision problems have spanned the period of seven years.  Although at times Colón has maintained good vision at other times his diabetes has left him nearly blind.  At the time this suit was brought, Colón was not suffering from vision issues.  However Colón's true physical impairment is his diabetes.  Neither party disputes that Colón's diabetes has never been cured.  Based on the varying

CIVIL 06-2131 (JAG)                    20

severity, and seemingly unpredictable durations of Colón's vision impairments, a reasonable fact finder could conclude that Colón is substantially limited in his ability to see because of his diabetes.  In turn the evidence is sufficient to allow a reasonable fact finder to conclude Colón is an individual with a disability as defined by the ADA due to his diabetes.

### ii.  Colón was a qualified individual under the ADA

The second element of a prima facie case requires the plaintiff to prove he was a qualified individual.  In order to be considered a qualified individual under the ADA, Colón must show that he satisfied the prerequisites for his position, and that he was able to perform the essential functions of his job with, or without, reasonable accommodations.  See 29 C.F.R. § 1630.2(m); Phelps v. Optima Health, Inc., 251 F.3d 21, 25 (1st Cir. 2001) (quoting Ward v. Mass. Health Research Inst., Inc., 209 F.3d 29, 32-33 (1st Cir. 2000)).  In regard to this element Colón offers that he received numerous promotions and salary increases during his time at Frito Lay.  (Docket No. 57-2, at 1, ¶ 2.)  Colón also offers the fact that his evaluations throughout his time at Frito Lay ranged from on target, above target, and distinguished.  (Id.) The defendant does not dispute these facts or offer any evidence that Colón did not satisfy the prerequisites for his position or at any time was unable to perform an essential function of his job.  Colón has

CIVIL 06-2131 (JAG)                        21

offered enough evidence as to this element to allow a reasonable fact finder to

determine that he was a qualified individual under the ADA.

> ### iii.  Discharged or adversely affected by Frito Lay,
> ### in whole or in part, because of his disability

The final element Colón must show to establish a prima facie case of

discrimination under the ADA is that he was discharged or adversely affected

because of his disability.

Colón first alleges that Frito Lay discriminated against him based on their

refusal to provide reasonable accommodations for his vision impairments between

1998 and 2005.  Specifically Colón alleges that his accommodation which allowed

him to ride in a private vehicle during required "ride alongs" was revoked.

An employer will be found to have discriminated against a disabled

employee if it does "not [make] reasonable accommodations to the known

physical or mental limitations of an otherwise qualified individual," unless it can

"demonstrate that the accommodation would impose an undue hardship on the

operation of the business . . . . "   42 U.S.C. § 12112(b)(5)(A); <u>see also</u>

<u>Calero-Cerezo v. United States Dep't of Justice</u>, 355 F.3d 6, 20 (1st Cir. P.R.

2004) (Federal statutes impose an affirmative duty on employers to offer

reasonable accommodations.).

CIVIL 06-2131 (JAG)                    22

Plaintiff does not dispute that following his surgery in March of 1998  he was waived from the requirement that he ride in the delivery trucks during ride alongs. This accommodation was allowed after Colón provided Frito Lay with a medical certificate stating that he was unable to do the ride alongs.  (Docket No. 45-11, at 53.)  The plaintiff asserts however that this accommodation was revoked in January of 2005 when Colón's supervisor, Alexander Pagán, informed him that he would now have to ride in the delivery trucks.  (Docket No. 57-2, at 3, ¶ 9.)  In its defense Frito Lay offers that after Pagán allegedly revoked Colón's accommodation, Colón continued to do the ride alongs in his private vehicle without any penalty or formal discipline.  (Docket No. 45-11, at 57:13-25, 58:1-7.)

Apart from his assertion that Pagán told him that he would no longer be able to perform ride alongs in his own vehicle Colón offers no evidence to support his assertion that the accommodation was revoked.[5]  Colón's own testimony shows that he continued to do the ride alongs in his private vehicle and Frito Lay did not formally penalize or discipline him for doing so.  Without more evidence that Colón's accommodation was revoked a reasonable fact finder could not conclude that at any point Colón stopped receiving reasonable accommodations for his

_____

[5] The defendant argues that Pagán's out of court statements are hearsay and thus not admissible for the truth of the matter.  However under Federal Rule of Evidence 801(d)(2)(D) the statement is admissible.

CIVIL 06-2131 (JAG)                      23

visual impairments.  Thus Colón's claim of discrimination based on Frito Lay's failure to provide reasonable accommodations must be dismissed.

Colón also alleges that his termination from Frito Lay on September 6, 2005 was discriminatory because it was based, in whole or in part, on his diabetes and subsequent vision issues.  Colón offers no direct evidence to show that his termination was a direct result of discrimination.  However it has been stated "discrimination, [is] rarely explicit and thus rarely the subject of direct evidence, [and] may be proven through the elimination of other plausible non-discriminatory reasons until the most plausible reason remaining is discrimination." Thomas v. Eastman Kodak Co., 183 F.3d 38, 61 (1st Cir. 1999) (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 n.8 (1981)).  Furthermore, "[e]vidence that the employer's stated reasons are pretextual can be sufficient for a jury to infer discriminatory animus." Chungchi Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 39 (1st Cir. 2003) (citing González v. El Día, Inc., 304 F.3d 63, 69 (1st Cir. 2002)).

Thus, although there is no direct evidence of discriminatory animus on the part of Frito Lay if Colón is able to eliminate Frito Lay's non-discriminatory reasons for his termination, a fact finder may have sufficient evidence to conclude that his termination was discriminatory.  Therefore, Colón has met his burden of providing

CIVIL 06-2131 (JAG)                    24

a prima facie case of discrimination under the ADA for both his speech impediment and diabetic condition.

2. Defendant's legitimate non-discriminatory reason for Colón's termination.

Once a prima facie showing of discrimination has been made the burden shifts to the defendant to provide a legitimate non-discriminatory basis for the adverse employment action. Tex. Dep't of Affairs v. Burdine, 450 U.S. at 254. The burden is one of production, not one of persuasion. Mesnick v. Gen. Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991).

Frito Lay's proferred reason for Colón's termination is his allegedly fraudulent insurance claim which arose out of the torching of his vehicle on February 9, 2005. (Docket No. 45-2, at 21.) Frito Lay contends that in order to obtain reimbursement under the Frito Lay insurance policy Colon fraudulently claimed he was working when his car was destroyed. (Id.)

In support of their determination that Colón filed a fraudulent claim, Frito Lay offers Annette Román's testimony. In her testimony Román states that after speaking to Colón she noticed discrepancies between the police report prepared by agent Mateo, which stated Colón had witnessed the arson to his car, and Colon's offer to contact the vehicle manufacturer to see if a defect may have caused the fire. (Docket No. 45-14, at 12-13.) Román further testifies that based on this discrepancy, and the need to determine whether Colon was working during

CIVIL 06-2131 (JAG)                    25

the incident, she referred the claim to the human resources office.  (Id. at 9.)

Román also states that when she requested assistance from the human resources

office she explained the case was out of the ordinary and she believed there may

be an issue with the code of conduct, specifically fraud.  (Id. at 6-7.).

    In further support of Frito Lay's determination that Colón had filed a

fraudulent claim defendant offers evidence of an investigation carried out by a

private detective who was hired by Frito Lay.  Based on the investigation the

detective concluded that at the time of the incident Colon had been visiting the

residence of a female friend and not performing official duties. (Docket No. 57-2,

at 8, ¶ 28.)

    Frito Lay claims that Colón's fraudulent claim is the reason for his

termination. (Docket No. 46, at 28.)  In support of the assertion that Colón was

terminated based on his filing of a fraudulent claim Frito Lay offers Colón's

termination letter.  However, Frito Lay has failed to provide an official English

translation of the letter.  This is a violation of Local Rule 10(b) and as such I will

not give weight to said letter.

    However, I find the evidence offered by Frito Lay including Annette Román's

testimony, and the investigation and findings of the private detective fulfill Frito

Lay's burden of producing a legitimate non-discriminatory reason for Colón's

dismissal.

CIVIL 06-2131 (JAG)                    26

Under the McDonnell Douglas framework if the defendant is able to provide a legitimate non-discriminatory reason for termination, the plaintiff then has an opportunity to show that it is not the true reason, but rather a pretext for discrimination.  McDonnell Douglas Corp. v. Green, 411 U.S. at 807.  Ultimately, the court must decide "whether, viewing the 'aggregate package of proof offered by the plaintiff' and taking all inferences in [his] favor, [he] has raised a genuine issue of fact as to whether the termination of [his] employment was motivated by . . . discrimination." Domínguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 431 (1st Cir. 2000) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d at 824-25).

In order to show pretext a plaintiff may highlight "'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason' [as] such that a fact finder could 'infer that the employer did not act for the asserted non-discriminatory reasons.'" Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 56 (1st Cir. 2000) (quoting Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 168 (1st Cir. 1998)).  When determining pretext the court's "'focus must be on the perception of the decisionmaker,' that is, whether the employer believed its stated reason to be credible." Mesnick v. Gen. Elec. Co., 950 F.2d at 824 (quoting Gray v. New England Tel. & Tel. Co., 792 F.2d 251, 256 (1st Cir. 1986)).

CIVIL 06-2131 (JAG)                    27

In order to show that Frito Lay's stated reason for Colón's termination is pretextual, Colón argues that the proferred reasons are pretextual in nature and unbelievable.  In support of this Colón first offers that the information he provided in his insurance claim was truthful.  Specifically Colón alleges that he was working at the time his car was set on fire.  Since summary judgement requires the court to view the facts in a light most hospitable to Colón, and draw all reasonable inferences in his favor, I will assume arguendo that Colón was working when his car caught fire.  This fact however still is not enough to allow a reasonable jury to find that Frito Lay's preferred reason for Colón's termination was pretextual. It remains undisputed that a private detective conducted an investigation which led him to subsequently report to Frito Lay that Colón was not working at the time of the incident.  Thus even if the investigator was incorrect in his report it does not alter Frito Lay's belief that its proferred reason for Colón's termination was credible.

Second, Colón alleges that a reasonable inference of pretext arises because this was the first time Frito Lay ever hired a private detective to investigate an insurance claim.  Colón supports this assertion with Annette Román's deposition in which she states that to the best of her knowledge this was the first time a private investigator had ever been hired to investigate an insurance claim. (Docket No. 45-14, at 3-4; Docket No. 57-5, at 28-29.)  Assuming arguendo that

CIVIL 06-2131 (JAG)                    28

this was the first time that Frito Lay has hired a private investigator this fact alone is not enough to allow a reasonable fact finder to conclude that Frito Lay's preferred reason for Colón's termination was pretextual.  Hiring the investigator does not show that Frito Lay had a discriminatory based animus when they decided to terminate Colón.  Colón does not dispute that Annette Román sparked the investigation against him based on her belief that there were conflicts in Colón's report to agent Mateo and his offer to investigate whether there could have been a manufacture defect in his car.  (Docket No. 57-1, at 12, ¶144.)  Frito Lay's decision to hire the investigator, even if it was the first time, is not enough to allow a reasonable fact finder to conclude that Frito Lay's preferred reason contains weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions sufficient to infer it is pretextual.

Third, Colón claims he was never questioned by the private detective or given the opportunity to refute the detective's findings.  The statement that Colón was never questioned by the detective is undisputed.  However Frito Lay contends that Colón could have refuted the detective's findings when he met with Alexander Pagán and Víctor Hernández. (Docket No. 13, at 29-30.)  Had Colón been questioned by the private detective, and given a chance to refute the detective's findings, Frito Lay would have more evidence to justify its belief that the detective's report was credible.  However a reasonable fact finder could not

CIVIL 06-2131 (JAG)                    29

conclude that Frito Lay did not believe that Colón made fraudulent claims based on the fact that Colón had not been interviewed, or given the chance to refute the investigator's findings.  This assertion by Colón even when taken as true is not enough to conclude that Frito Lay's proferred reason for his termination is inconsistent, contradictory or ultimately pretextual and unbelievable.

Fourth, Colón offers that he was entitled to coverage under Frito Lay's insurance policy whether he was working or not.  Colón claims that if Frito Lay decided to deny his claim the consequence should have been non-payment rather than termination.  In further support that Frito Lay's proferred reason for termination was pretextual, Colón offers that his claim was never adjusted.  These two assertions miss the mark.  Colón was terminated not because he did not deserve insurance coverage by Frito Lay.  He was terminated because he provided what Frito Lay believed to be fraudulent statements.  The fate of Colón's insurance claim is a separate matter and not evidence of pretext.

Colón offers no direct evidence that Frito Lay was motivated by disability discrimination when it was determined that he should be terminated.  Further, viewing the aggregate package of proof offered by Colón, and taking all inferences in his favor, I do not find that he has raised a genuine issue of fact as to whether the termination of his employment was motivated by discrimination.  As a result Colón's ADA claim must be dismissed pursuant to Rule 56.

CIVIL 06-2131 (JAG)                    30

B.  Plaintiff's ADEA claim

The ADEA makes it "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29. U.S.C. 623(a)(1). "In a wrongful discharge case under the ADEA, the plaintiff bears the ultimate 'burden of proving that . . . he would not have been fired but for his age." Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 478 (1st Cir. 1993) (quoting Freeman v. Package Mach. Co., 865 F.2d 1331, 1335 (1st Cir. 1988)).

When there is not direct evidence of age discrimination, the previously discussed McDonald-Douglas framework is used.  The framework first requires the plaintiff to establish a prima facie case of age discrimination by showing that (1) he is within the protected class; (2) that his job performance was satisfactory and met his employer's legitimate expectations; (3) that he suffered an adverse employment action; and (4) ) that the employer had a continuing need for the services that he had been rendering.  Suárez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000) (citing Freeman v. Package Mach. Co., 865 F.2d at 1335; Menzel v. W. Auto Supply Co., 848 F.2d 327, 328 (1st Cir. 1988)).

In the instant case the first three elements of Colón's ADEA claim have been met.  Colón is over forty years of age, his job performance was at least

CIVIL 06-2131 (JAG)                         31

satisfactory, and he was terminated from his job at Frito Lay.  The final element remains in dispute.

As to Frito Lay having a need for the same services and skills Colón had provided, Colón asserts that after his termination Frito Lay was seeking a replacement for Colón with roughly equivalent job qualifications.  Colón alleges that his duties at Frito Lay were taken over by Héctor Sánchez, and a search for a permanent replacement began just a few months later.  (Docket No. 59, at 15.) In support of this, Colón offers two job announcements from Frito Lay. One announcement is dated May 16, 2006 and is for a position in the sales department in the Guaynabo office, the other is an announcement for the position of district sales manager in Ponce, Puerto Rico, dated June 4th of an unspecified year. (Docket No. 57-10.)  Meanwhile the defendant asserts that Mr. Sánchez was only temporarily assigned to cover Colón's position, and that the search for a replacement did not begin until two years after Colón was terminated.

Regardless of when the search for a permanent replacement for Colón began, Colón has offered sufficient evidence to allow a reasonable fact finder to determine that Frito Lay sought a replacement for Colón in Héctor Sánchez, and later through a formal hiring process.  This shows that Frito Lay had a continuing need for the skills and services Colón had provided.  In turn a reasonable fact finder could conclude Colón has satisfied the fourth prong of his prima facie case

CIVIL 06-2131 (JAG)                    32

of age discrimination and I must proceed to analyze his claim under the next step

in the McDonnell-Douglas framework.

        The final step in analyzing an ADEA claim under the McDonnell-Douglas

framework mirrors that of analyzing an ADA claim under the framework.  In this

final step the defendant has the burden to provide a proferred reason for the

termination.  The plaintiff then has the opportunity to show the proferred reason

is pretextual.

        Frito Lay's proferred reason for Colón's termination in both the ADA claim

and the ADEA claim is Colón's allegedly fraudulent insurance claim which arose out

of the torching of his vehicle on February 9, 2005.  Colón's claims that this

proferred reason is pretextual also remains the same and he offers no direct

evidence that his termination was based on his age.  Thus the above analysis is

applicable to Colón's ADEA claim and I find that Colón has not raised a genuine

issue of fact as to whether the termination of his employment was motivated by

age discrimination.  As a result, Colón's ADEA claim must be dismissed pursuant

to Rule 56.

C.  Plaintiff's retaliation claim under ADA and ADEA

        Title VII, in part, makes it illegal "for an employer to discriminate against

any of his employees . . . because he has opposed any practice made an unlawful

. . . or because he has made a charge, testified, assisted, or participated in any

CIVIL 06-2131 (JAG)                    33

manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  While attempting to determine when an employee has 'opposed' an unlawful practice the Supreme Court recently stated "'[w]hen an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication' virtually always 'constitutes the employee's *opposition* to the activity'" for purposes of 42 U.S.C. § 2000e-3(a).  Crawford v. Metro. Gov't of Nashville & Davidson County, 129 S. Ct. 846, 851 (2009) (quoting Brief for United States as *Amicus Curiae* 9 (citing 2 EEOC Compliance Manual §§ 8-II-B(1), (2), at 614:0003 (Mar. 2003)).

The Supreme Court has also stated "[t]he anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006).

In order to succeed in a retaliation claim Colón must show "(1) [he] engaged in protected activity; (2) [he] suffered some materially adverse action; and (3) the adverse action was causally linked to his protected activity."  Dixon v. Int'l Bhd. of Police Officers, 504 F.3d 73, 81 (1st Cir. 2007), cert. dismissed, 128 S. Ct. 1138 (2008).

Colón alleges that he engaged in two protected activities.  Colón alleges that the first protected activity was his refusal to stop performing ride alongs in his private vehicle after Alexander Pagán told him that it would no longer be allowed.

CIVIL 06-2131 (JAG)                    34

(Docket No. 57-2, at 3).  The second protected activity Colón alleges he engaged in was his complaints about increasing hostilities and harassment against him due to his disabilities and age.  (Docket No. 45-12, at 43-49.)  Colón claims that the materially adverse action he suffered as a result of engaging in these two protected activities was termination.

I will assume arguendo that Colón is able to provide sufficient evidence to allow a reasonable fact finder to find he has fulfilled the first two elements of a prima facie case of retaliation.  However, his claim must still fail since he is unable to show his engagement in these protected activities is causally related to his termination.  Colón offers no direct evidence of a causal relationship.  As previously discussed he also fails to offer sufficient evidence under the McDonnell Douglas framework for a reasonable fact finder to conclude that Frito Lay's preferred reason for his termination was pretextual.

Given that Frito Lay's preferred reason for Colón's termination is legitimate it can not be found that it is being used to cover up a retaliatory animus.  Therefore Colón's claims of retaliation under the ADA and ADEA must be dismissed.

D.  Plaintiffs Hostile Work Environment Claim

In order to succeed in a hostile work environment claim under the ADA, or ADEA, Colón must show that "the workplace is permeated with discriminatory

CIVIL 06-2131 (JAG)                     35

intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Valentín-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006) (quoting O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, (1993)).  Title VII does not protect against all harassment, "Title VII is neither a civility code nor a general anti-harassment code."  Lee-Crespo v. Schering-Plough del Caribe Inc., 354 F.3d 34, 37 (1st Cir. 2003).  Rather "The discrimination must be based on gender or some other prohibited category."  Id.

Further, the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment; the victim must also show he subjectively perceived the environment to be abusive.  Harris v. Forklift Sys., Inc., 510 U.S. at 21.  It is not necessary for an environment to cause concrete psychological injury to be hostile.  Id. at 22.  However, it must be true that the environment could be, and was, reasonably perceived as hostile.  Id.

"'There is no mathematically precise test to determine whether [a plaintiff] presented sufficient evidence' that [he] was subjected to a severely or pervasively hostile work environment."  Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 83 (1st Cir. 2006) (quoting Kosereis v. Rhode Island, 331 F.3d 207, 216 (1st Cir. 2003)).  However, the court should look at the totality of the circumstances and

CIVIL 06-2131 (JAG)                    36

consider numerous factors including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. at 23.

While determining if a work environment could reasonably be perceived as hostile is generally reserved for the fact finder due to the fact specific nature of the inquiry summary judgment is an appropriate vehicle for "polic[ing] the baseline for hostile environment claims." Pomales v. Celulares Telefónica, inc., 447 F.3d at 83 (quoting Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999) (en banc)).

In support of his hostile work environment claim Colón offers that he was subject to continued harassment, jokes, and mockery at Frito Lay due to his age, speech, and diabetes related visual impairments. (Docket No. 57-2, at 3, ¶ 10.) According to Colón, sales director Luis Padua made fun of Colón's speech before and after learning of his speech condition. (Docket No. 45-12, at 14-17.) Although he is unable to remember specific instances, Colón also claims that Padua would not allow him to finish presentations. (Id. at 23-27.) Colón claims to have notified his immediate supervisor, Danny Rodríguez of Padua's harassment. (Docket No. 45-12, at 18-19.)

CIVIL 06-2131 (JAG)                    37

Colón also claims that there was joking about his speech during managers'
meetings.   (Docket No. 57-2 at, 3-4, ¶ 11.)   Colón further alleges that a
humiliating incident occurred on or about June 2005 when he stumbled on a
computer cable.  (Docket No. 57-2, at 4, ¶ 12.)  Colón claims from then on he
was heckled for his poor eyesight.   (Id.)   Although Colón never visited a
psychologist, he claims that the joking and mocking situation did affect him
mentally and psychologically.  (Docket No. 45-12, at 50-51.) Viewing the record
in the light most favorable to Colón and drawing all inferences in his favor I cannot
conclude that he has provided sufficient evidentiary support to allow a finding that
he was subjected to a hostile work environment.

Colón provides little evidence which could lead to the conclusion that his
work environment at Frito Lay could reasonably be considered hostile. The
severity of the harassment against Colón is difficult to measure since he makes
little reference to specific instances of harassment.  Those instances which Colón
does reference however are not physically threatening or humiliating, and amount
to nothing more then offensive utterances.  Even taken as true these allegations
do not show that the harassment against Colón was sufficiently severe or
pervasive to alter the conditions of his employment and create an abusive working
environment.  Further, Colón offers no evidence that his working conditions were
altered or his work performance suffered as a result of the alleged hostilities.

CIVIL 06-2131 (JAG)                    38

Based on the scant amount of evidence offered I cannot find that a reasonable fact finder could conclude that Colón was subject to a hostile work environment and accordingly Colón's hostile work environment claim must be dismissed.

IV.  CONCLUSION

There remains no genuine issue of material fact as to any of Colón's claims against Frito Lay.   Accordingly, I recommend that the motion for summary judgment (Docket No. 46) be granted and that Colón's ADA, ADEA, retaliation, and hostile work environment claims be dismissed with prejudice.   I further recommend any supplemental claims under Puerto Rico law be dismissed without prejudice.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.   Failure to comply with this rule precludes further appellate review.   See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccarone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health &

CIVIL 06-2131 (JAG)                    39

Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14

(1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982);

Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

        At San Juan, Puerto Rico, this 13th day of October, 2009.

                                    S/ JUSTO ARENAS
                        Chief United States Magistrate Judge