IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JESUS COLON-ANABITARTE

**Plaintiff(s)**

**v.**

FRITO LAY QUAKER PUERTO RICO

**Defendants**

**CIVIL NO.** 06-2131 (JAG)

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

Pending before the Court is Frito Lay Quaker Puerto Rico's ("Frito Lay") Motion for Summary Judgment (Docket No. 46).  For the reasons set forth below Frito Lay's Motion is **GRANTED.**

### PROCEDURAL BACKGROUND[1]

On November 13, 2006, Jesus Colon-Anabitarte ("Plaintiff") filed a complaint asserting a termination of employment claim for violation of the Age Discrimination in Employment Act (hereinafter "ADEA"), 29 U.S.C. § 621 et. seq., and the American with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (hereinafter "ADA") which incorporates by reference section 706(f)(1) of Title VII of the Civil Rights Act of 1964 and 1991, as amended, 42 U.S.C. §2000e-5 and 28 U.S.C. § 1331 (hereinafter "Title VII"); retaliation claims under the ADEA and the ADA; and hostile work

---

[1] The relevant facts are taken from the Magistrate-Judge's Report and Recommendation. (Docket No. 79).

Civil 06-2131 (JAG)                                          2

environment under the ADEA and the ADA. Colón has requested this Court to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over claims brought under Puerto Rico Law No. 100 of June 30th, 1959, 29 L.P.R.A. § 146 et seq., Puerto Rico Law No. 80 of May 30th, 1976, 29 L.P.R.A. §185a et. seq., Puerto Rico Law No. 115 of December 20th, 1991, 29 L.P.R.A. § 194(a), Puerto Rico Law No. 44 of June 2nd, 1985, as amended, 1 L.P.R.A. § 501 et. seq., and Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. §5141.

Plaintiff was hired by Frito Lay Quaker as a temporary salesperson on January 12, 1987. (Docket No. 45-2, at 18.) Colón worked for the company without interruption for approximately 18 years during which he occupied various positions. (Docket No. 57-2, at 1, ¶ 1.) Throughout his employment Colón received evaluations ranging from on target, above target and distinguished, as well as numerous salary increases. (Id. ¶ 2.) During his tenure at Frito Lay, Colón suffered from diabetes and hypertension. (Id. at 2, ¶ 6.) Frito Lay was informed of this condition. (Id.) As a result of his disease, Colón had a complication known as diabetic retinopathy. (Id. ¶ 7.) In March of 1998 Colón suffered a hemorrhage which left him barely able to see. (Id.) During the period between March of 1998 and May of 1998 Colón was instructed by his doctor to keep his sugar under control and to be careful in the street since his vision was not good. (Docket No. 45-11, at 6:15-17.)

Civil 06-2131 (JAG)                                                    3

On June 1, 1998 Colón had surgery on one eye, then after recovering for a month had surgery on his second eye. (Id. at 32:19-25; at 33:2-6.) After his two surgeries Colón returned to work having regained one hundred percent of his vision. (Id. at 35:23-25; 36:1-15.) However, Colón's perfect vision was short lived; he began to develop cataracts due to his diabetes around October of 1998 and by November 1998 (three months after his vision was restored) he required prescription glasses. (Id. at 36:16-23; 37-39.) Despite his cataract problem Colón was able to perform daily life activities with minor adjustments. (Id. at 43:7-12.) Colón informed his immediate supervisor, Carlos Lewis Rivera, and another supervisor, Wilson Comas, about his cataracts problem. (Id. at 40-41.) In May of 2005 Colón underwent a second eye surgery to correct the problems with his cataracts. (Id. at 44:17-24.) As a result of the surgery Colón once again regained one hundred percent of his vision. (Id. at 46:10-13.) Since the surgery, Colón has not had any vision problems. (Id. at ll. 14-17.)

One of Colón's duties as district sales manager was to do at least 15 ride alongs per year with the salespeople he supervised. (Id. at 47:13-15.) Prior to his retinopathy condition (March 1998) Colón was able to perform the ride alongs without a problem. (Id. at 51-52.) However, after returning from his operation in August 1998 Colón was unable to tolerate the ride alongs due to the high temperature inside the delivery trucks. (Id.) Colón spoke to his

supervisor about the problem and was told he could do the ride alongs in his private vehicle. (Id. at 52:6-10.) However when Wilson Comas became the director of sales, he stated that Colón had to do all ride alongs in the delivery trucks. (Id. at ll. 13-14.) Colón brought in a medical certificate stating that he could not do the ride alongs in the delivery trucks, and continued to do the ride alongs in his own car. (Id. at 53-57.) According to Colón in January of 2005 he was once again told (this time by his then supervisor Alexander Pagán) that he could no longer perform the ride alongs in his private vehicle. (Docket No. 57-2, at 3, ¶ 9.) Nonetheless, Colón continued to do the ride alongs in his private vehicle and was never formally disciplined or penalized for doing so. (Docket No. 45-11, at 58:5-7.) In addition to the issues with his eyes Colón also has an undiagnosed speech problem. (Docket No. 45-12, 4:1-5.) Although Colón usually speaks normally, when he becomes a little nervous his speech problem leads him to stutter and his words to become entangled. (Id. at 5:14-22.) Colón usually stutters when he is in a meeting, making a presentation, or talking to clients. (Id. at 6:1-4.) Colón is able to avoid the stuttering if he thinks through what he is about to say before he says it. (Id. 7:7-8.) While he claims that this condition affects him in his daily life, Colón has never seen a doctor about it, does not consider it a medical condition, and does not "feel handicapped". (Id. at 8-9.)

Civil 06-2131 (JAG)                                                     5

    Colón claims that he was constantly subjected to harassment, jokes, and mockery in the workplace because of his speech and visual disabilities. (Docket No. 57-2, at 3, ¶ 10.) Colón attests that the sales director, Luis Padua, stated that Colón could not perform the functions of his job because of the way he spoke. (Docket No. 45-12, at 11:17-25.) Colón further asserts that Padua made fun of him in the presence of salespeople before and after learning of his speech condition. (Id. at 14:20-24; at 15-17.) Colón also claims Padua would not allow him to finish presentations during manager's meetings. (Id. at 23:8-25; at 24- 27.) Colón notified his immediate supervisor Danny Rodríguez of Padua's harassment. (Id. at 18:3-4.) Rodríguez did not say anything in response to Colón's complaint, and Colón never made a formal complaint at the office of human resources related to the harassment. (Id. at 18:18-25; at 19:18-24.)

    At some point in 1996 the manager of the key accounts, Richard Valdés, informed Colón that he was being transferred to the position of district sales manager in the Guaynabo office. (Id. at 32:11-24; at 33:5.) According to Colón after the 1996 transfer the joking about his speech continued during manager's meetings which occurred once a month. (Docket No. 45-12, at 42;12-25; at 43.) Colón spoke with human resources sales manager Luis Noriega on a couple of occasions about being made fun of due to his speech impediment. (Id. at 43:14-25.) After Noriega left Frito Lay in 2003

Civil 06-2131 (JAG)                                                                    6

Colón spoke to his immediate supervisor Alexander Pagan about the harassment. (Id. at 49:1-14 ) However, the mockery continued unabated until Colón's termination in September of 2005. (Id.) Colón claims that the joking and mocking situation affected him mentally and psychologically but he never sought psychological help. (Id. at 50:18-23.) Colón also never considered filing a complaint outside Frito Lay with the EEOC or the Anti-Discrimination Unit, although he was aware of his right to file such a complaint with these agencies. (Id. at 54:16-25; at 55:1.) Colón was also aware of Frito Lay's anti-discrimination and anti-harassment policies. (Id. at 56:8-13.)

On February 9, 2005 after visiting a client in Saint Just, Panadería Barcelona from approximately 7:00 p.m. to 7:30 p.m., Colón encountered a woman by the name of Luz Ortega Berdecía. (Docket No. 45-13, at 2, 5.) Colón asked Ortega for a drink of water and went to her house. (Id. at 5-6.) While in the house Colón heard Ortega screaming at which point he ran out of the house to find his car on fire. (Id. at 9:22-25.) Police and fire fighters came and made a report of the incident. (Id. at 10:16-17.) After speaking to the police Colón called his immediate supervisor, Alexander Pagán, and left a message informing him that the car had been burnt while Colón was working. (Id. at ll. 19-22.) Frito Lay has a written policy for claims related to damages caused to supervisors' cars. (Docket No. 45-14, at 18, Docket No. 45-15, at

Civil 06-2131 (JAG)                                                    7

1.) In the event that an accident is caused by a third party, and the accident occurs during working hours, Frito Lay covers one hundred percent of the damages to the vehicle. (Docket No. 45-14, at 15:14-25; at 16; Docket No. 45-15, at 1.) However, if the accident occurs outside working hours, Frito Lay will pay the amount over the $500 deductible and the 20% depreciation cost of the vehicle. (Docket No. 45-14, at 16:9-11; Docket No. 45-15, at 1.)

Carlos Espada Mateo interviewed Colón on the day of the incident and subsequently prepared an incident report. (Docket No. 45-13, at 13-14.) In the incident report Mateo stated that Colón claimed somebody approached his vehicle with a yellow container and lit the container on fire before leaving. (Id. at 14:7-14.) Colón later contacted agent Espada Mateo and asked him to add to the report that Colón was working at the time his car was incinerated. (Docket No. 45-13, at 17:4-10.)   The day after Colón's truck was set on fire he met with supervisor Alexander Pagán to explain the incident. (Docket No. 45-13, at 204.) Two weeks later Colón met with Annette Román who is Frito Lay's Comptroller and is in charge of processing insurance claims. (Docket No. 57-2, at 6, ¶ 20.) Colón gave Annette Román various documents to process his claim including: the incident report, the names of clients that he had visited that day, the value of his car, and various photos of the burnt car. (Id.) On June 14, 2005, Colón filled out an Automobile

Civil 06-2131 (JAG)                                                          8

Accident Report which he then sent to Román. (Docket No. 45-13, at 25.) In the incident report Colón stated that he had been supervising clients and afterward found his car in flames as he walked towards it. (Id. at 26:21-24.) At a later date while meeting with Annette Román, Colón mentioned that he was going to speak with the vehicle manufacturer to see whether the vehicle had a defect that may have caused the fire. (Docket No. 45-14, at 24:8-10.) Román noticed the discrepancy between the report which stated Colón witnessed an individual torch his vehicle, and Colón's suspicion that there may be a manufacturing defect. (Id. at ll. 12-14.) Román requested assistance from the human resources office to determine if the incident had occurred during work hours, and in turn which part of Frito Lay's policy applied. (Id. at 9:6-25.) Roman further explained to the human resources department that she thought the case was out of the ordinary and that their intervention may be necessary to determine whether there was an issue with the code of conduct. (Id. at 7:1-5; at 6:16-18; at 5:8-22.)

A private detective was hired by Frito Lay to analyze and determine the validity of Colón's claim. To the best of Román's knowledge this is the first time a private investigator had ever been hired to investigate a claim. (Id. at 4:25; at 3:1). Plaintiff was not interviewed as part of the investigation. (Docket No. 57-2, at 8, ¶ 28). The detective determined that at the time the incident

Civil 06-2131 (JAG)                                                    9

occurred Colón had not been working. Id. Subsequent to the
investigation Nicolas Bahamon (general manager) and Julio Justo
(human resources manager) decided to terminate Plaintiff from his
employment with Frito Lay. (Docket No. 45-2, at 21-22). On
September 6th, 2005, a meeting was held between Alexander Pagán,
Víctor Hernández and Colón during which Colón was read a
termination letter and was given a copy. (Docket No. 45-13, at 29-
30). After Colón was terminated Hector Sánchez was assigned to
perform Colón's duties until a permanent replacement could be
found. (Docket No. 45-2, at 23). Frito Lay claims that the decision
to terminate Colón was based on his violation of the company's
rules of conduct. Specifically, Frito Lay claims Colón provided
false information by claiming to have been working when in fact he
was off duty. (Id. at 21).  Frito Lay asserts Colón provided them
with this false information in order to receive reimbursement for
the damages suffered as a result of his destroyed vehicle. Id.
Colón however claims that this reason is pretextual.

     On January 30, 2009, Frito Lay filed a Motion for Summary
Judgment. (Docket No. 46).  On April 4, 2009, Plaintiff replied.
(Docket No. 59).  Said Motion was referred to Magistrate Judge
Justo Arenas. (Docket No. 63).  On October 13, 2009, Magistrate
Judge Arenas issued a Report and Recommendation which found that
there are no genuine issues of material fact as to any of
Plaintiff's claims against Frito Lay. (Docket No. 79).  The

Civil 06-2131 (JAG)                                                    10

Magistrate Judge recommends that the Motion for Summary Judgment be granted and that Plaintiff's ADA, ADEA, retaliation and hostile work environment claims be dismissed with prejudice. Furthermore, he recommends that any supplemental claims under Puerto Rico law be dismissed with prejudice. Plaintiff objected to the Report and Recommendation (Docket No. 84), and Frito Lay replied to said objections. (Docket No. 88).

**STANDARD OF REVIEW**

1. <u>Summary Judgment Standard</u>

"Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law based on the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits." <u>Thompson v. Coca-Cola Co.</u>, 522 F.3d 168, 175 (1st Cir. 2008) (citing Fed. R. Civ. P. 56(c)). The issue is "genuine" if it can be resolved in favor of either party. <u>Calero-Cerezo v. U.S. Dep't of Justice</u>, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" if it has the potential to change the outcome of the suit under governing law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). "In prospecting for genuine issues of material fact, we resolve all conflicts and draw all reasonable inferences in the nonmovant's

Civil 06-2131 (JAG)                                                    11

favor." Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008).

Although this perspective is favorable to the nonmovant, once a properly supported motion has been presented before this Court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant this Court's denial of the motion for summary judgment. Anderson, 477 U.S. at 248. The opposing party must demonstrate "through submissions of evidentiary quality, that a trial worthy issue persists." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (internal citations omitted). Moreover, on issues "where [the opposing] party bears the burden of proof, it 'must present definite, competent evidence' from which a reasonable jury could find in its favor." United States v. Union Bank for Sav. & Inv.(Jordan), 487 F.3d 8, 17 (1st Cir. 2007) (citing United States v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992)). Hence, summary judgment may be appropriate, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (citing Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)). It is important to note that throughout this process, this Court cannot make credibility determinations, weigh the evidence, and make legitimate inferences from the facts, as they are jury functions, not those of a judge. Anderson, 477 U.S. at 255.

Civil 06-2131 (JAG)                                           12

2)  Standard  for  Reviewing  a  Magistrate-Judge's  Report  and
Recommendation

     Pursuant  to  28  U.S.C.  §§  636(b)  (1)  (B);  Fed.  R.  Civ.  P.
72(b);  and  Local  Rule  503;  a  District  Court  may  refer  dispositive
motions  to  a  United  States  Magistrate  Judge  for  a  Report  and
Recommendation.  See  Alamo  Rodriguez  v.  Pfizer  Pharmaceuticals,
Inc.,  286  F.Supp.2d  144,  146  (D.P.R.  2003).  The  adversely  affected
party  may  "contest  the  Magistrate  Judge's  report  and  recommendation
by  filing  objections  'within  ten  days  of  being  served'  with  a  copy
of  the  order."  United  States  of  America  v.  Mercado  Pagan,  286
F.Supp.2d  231,  233  (D.P.R.  2003)  (quoting  28  U.S.C.  §§  636(b)(1)).
If  objections  are  timely  filed,  the  District  Judge  shall  "make  a  de
novo  determination  of  those  portions  of  the  report  or  specified
findings  or  recommendation  to  which  [an]  objection  is  made."
Rivera-De-Leon  v.  Maxon  Eng'g  Servs.,  283  F.  Supp.  2d  550,  555
(D.P.R.  2003).  The  Court  can  "accept,  reject,  or  modify,  in  whole
or  in  part,  the  findings  or  recommendations  made  by  the
magistrate,"  however,  if  the  affected  party  fails  to  timely  file
objections,  "the  district  court  can  assume  that  they  have  agreed  to
the  magistrate's  recommendation."  Alamo  Rodriguez,  286  F.Supp.2d  at
146  (quoting  Templeman  v.  Chris  Craft  Corp.,  770  F.2d  245,  247  (1st
Cir.  1985).

Civil 06-2131 (JAG)                                                    13

**ANALYSIS**

1. <u>Americans with Disabilities Act ("ADA")</u>

The ADA is a civil rights statute enacted "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(2). The ADA prohibits a "covered entity"[2] from discriminating against a "qualified individual with a disability" because of his or her disability, in regards to job application procedures, hiring, advancement, discharge, compensation, training, and other terms, conditions and privileges of employment. 42 U.S.C. § 12112(a). In addition, the term "discriminate" includes when a "covered entity" does not make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," unless such accommodations "would impose an undue hardship on the operation of the business." <u>Id.</u> §12112(b)(5)(A). In order to state a claim under the ADA the plaintiff must adequately allege that he suffers from a disability. "The term "disability" means, with respect to an individual: (A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42

_____

[2] A "covered entity" is defined as "an employer, employment agency, labor organization or joint labor-management committee." 42 U.S.C. § 12112.  Neither party disputes that Frito Lay is a covered entity under the ADA.

Civil 06-2131 (JAG)                                                    14

U.S.C. § 12102(2). Although the ADA does not further define the

terms "physical or mental impairment," "substantially limits", and

"major life activities" the EEOC regulation offers guidance. The

EEOC defines "physical or mental impairment" as:

> (1) Any physiological disorder, or condition, cosmetic
> disfigurement, or anatomical loss affecting one or more
> of   the   following   body   systems:   neurological,
> musculoskeletal,   special   sense   organs,   respiratory
> (including speech organs), cardiovascular, reproductive,
> digestive, genito-urinary, hemic and lymphatic, skin, and
> endocrine; or

> (2) Any  mental  or  psychological  disorder,  such  as  mental
> retardation,  organic  brain  syndrome,  emotional  or  mental
> illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h)

The term "substantially limits" means,

> (I)  Unable  to  perform  a  major  life  activity  that  the
> average person in the general population can perform; or
> (ii) Significantly restricted as to the condition, manner
> or  duration  under  which  an  individual  can  perform  a
> particular  major  life  activity  as  compared  to  the
> condition, manner, or duration under which the average
> person  in  the  general  population  can  perform  that  same
> major life activity.

29 C.F.R. § 1630.2(j)(1)

     In turn, the EEOC defines the term "major life activities" as

"functions  such  as  caring  for  oneself,  performing  manual  tasks,

walking,  seeing,  hearing,  speaking,  breathing,  learning,  and

working." 29 C.F.R. § 1630.2(I). The use of "such as" denotes that

Civil 06-2131 (JAG)                                                    15

this list is exemplary and not exhaustive.[3] <u>Bragdon v. Abbott</u>, 524
U.S. 624, 639 (1998). The Supreme Court further defined the term
"major life activities" as referring "to those activities that are
of central importance to daily life." <u>Toyota Motor Mfg., Ky. v.
Williams</u>, 534 U.S. 184, 197 (2002).

    As explained above, Plaintiff claims discrimination under ADA
as to both his speech impediment and his diabetes.  The Magistrate
Judge found that in terms of his speech impediment Plaintiff should
not be considered disabled because as Plaintiff himself affirms, he
speaks normally when not nervous. Moreover, the Magistrate found
that Plaintiff offered no evidence that his speech impediment
prevents or restricts his speaking ability.  Nevertheless, the
Magistrate Judge states that a fact finder could conclude on the
basis of Plaintiff's evidence that he was "regarded as" disabled.
Plaintiff provided evidence which states that he was prevented from
doing presentations and that he was mocked because of his speech
impediment. Consequently, assessing all the evidence in Plaintiff's
favor this Court finds that a factfinder could conclude that he was
"regarded as" disabled.

---

    [3] For example, interpretative guidance to the EEOC
regulations notes that, "other major life activities include, but
are not limited to, sitting, standing, lifting, and reaching."
See., EEOC Compliance Manual § 902.3(b) (02/02/2000), available
at http://www.eeoc.gov/policy/docs/902cm.html.

With regards to Plaintiff's diabetes[4], the Magistrate Judge found that a reasonable fact finder could conclude that Plaintiff is an individual with a disability as defined by the ADA.  It is undisputed by the parties that Diabetes is a physical impairment under the ADA.  See Carreras v. Sajo, 596 F.3d 25, 32 (1st Cir. 2010).  However, Frito Lay objects to the Magistrate's finding that Plaintiff's diabetes 'substantially limits' one or more of his major life activities.  The Magistrate Judge considered Plaintiff's diabetes as substantially limiting because of its effect on his ability to see.   It is undisputed that Plaintiff's diabetes affected his vision.

As explained above, Plaintiff states in his deposition that in March 1998 he suffered from a diabetic retinopathy which left him almost blind so he had to have two surgeries, one in each eye. Plaintiff stated that he fully regained his vision by August 1998, two months after his second surgery.  However, a few months later he was diagnosed with cataracts. As a result, he was prescribed eyeglasses.   In May 2005, he underwent a cataract surgery and has not used glasses ever since.  Frito Lay claims that Plaintiff was not a disabled individual when he was terminated thus he has failed to established a prima facie case of discrimination. It is clear

---

[4] Plaintiff also asserts that his diabetes affects his ability to eat, however, we agree with the Magistrate Judge that since Plaintiff has not presented evidence to demonstrate this impairment the Court will disregard it in its analysis.

Civil 06-2131 (JAG)                                                        17

that Plaintiff was not suffering from vision problems at the time
of his termination in September 2005 because he states in his
deposition that he had no problem seeing after his operation.  On
the other hand, the Magistrate found that the true overarching
impairment was his diabetes, which caused Plaintiff to suffer
vision problems of unpredictable duration.  Thus he recommends that
a reasonable fact finder could conclude that Plaintiff was
substantially limited in his ability to see and thus disabled due
to his diabetes.

       This Court, however, disagrees with the Magistrate Judge that
Plaintiff's vision is substantially limited by his diabetes.
"The  ADA  does  not  define  'substantially  limits,'  but
'substantially' suggests 'considerable' or 'specified to a large
degree.'" Carreras, 596 F.3d at 33.  In Carreras, a recent case
from the First Circuit, the Court found that plaintiff's "ability
to see did not differ in a significant way from that of the general
population." Carreras, 596 F.3d at 34.  The Court goes on to state
that "to qualify as disabling, a limitation . . . must be permanent
or long term, and considerable compared to the [seeing] most people
do in their daily lives." Id., (citing Fredricksen v. United Parcel
Serv., Co., 581 F.3d 516, 522 (7th Cir. 2009)).  The Supreme Court
has stated that individuals, claiming ADA protection as a result of
problems with their vision must "prove [their] disability by
offering evidence that the extent of the limitation in terms of

Civil 06-2131 (JAG)                                              18

their own experience, as in loss of depth perception and visual field, is substantial." Albertson's, Inc., v. Kirkingburg, 527 U.S. 555, 565-67 (1999).  In Carreras the Court found that plaintiff [drove] his son to school and himself to work every morning, [drove] home again in the evening, [read] as part of his current employment, and perform[ed] other routine daily activities that presumably would not be possible if his vision were substantially impaired." Carreras, 596 F.3d at 34.  In the present case, Plaintiff stated in his deposition that he drove in his own vehicle during the ride alongs, instead of the company truck.  Further, he states that he drove his own vehicle until he left Frito Lay. Therefore, in the same manner as in Carreras, Plaintiff's vision must not have been substantially impaired if he could drive his car during the ride alongs.  Consequently, this Court finds that Plaintiff's diabetes does not limit his sight to a degree that would differentiate his from the rest of the population. Carreras, 596 F.3d at 34. We find that there is no genuine issue of material fact as to whether Plaintiff's vision is substantially limited by his diabetes.  Hence, this Court shall proceed with the examination of Plaintiff's prima facie case for discrimination under the ADEA, only as to Plaintiff's speech impediment.

The second element of a prima facie case requires Plaintiff to demonstrate that he was a qualified individual under the statute. To establish he was qualified Plaintiff must demonstrate that "he

Civil 06-2131 (JAG)                                               19

had the necessary skill, experience, education, and other job-related requirements . . . and that he was able to perform the essential functions of the position 'with or without reasonable accommodation.'" Richardson v. Friendly Ice Cream Corp., 594 F.3d 69, 75 (1st Cir. 2010)(citing Mulloy v. Acushnet Co., 460 F.3d 141, 147 (1st Cir. 2006)).  This Court agrees with the Magistrate that Plaintiff has presented sufficient evidence, including promotions, salary increases and positive evaluations, to allow a reasonable fact finder to conclude that he is a qualified individual under the ADA.

The final element to establish prima facie discrimination is that he was discharged or adversely affected because of his disability.  Plaintiff alleges that his termination was discriminatory because it was based on Frito Lay's refusal to provide accommodations for his vision impairments. Nevertheless, since this Court already found that there is no material fact as to whether Plaintiff's diabetes was substantially limiting, this Court cannot proceed with said arguments.  Moreover, this Court cannot find evidence on the record that demonstrates that Plaintiff was discharged as a result of his speech impediment. Therefore, after reviewing the proffered evidence we find that there is no genuine issue as to any material fact as to Plaintiff's claim of discrimination under ADA that could lead a reasonable fact finder to find in Plaintiff's favor.  This finding will render unnecessary

a discussion on pretext.   Therefore, the Court grants summary judgment in favor of Frito Lay as to Plaintiff's ADA claim.

## 2. Age Discrimination in Employment Act

The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The "ADEA does not stop a company from discharging an employee for any reason (fair or unfair) or for no reason, so long as the decision to fire does not stem from the person's age." Mesnick v. General Electric Co., 950 F.2d 816, 825 (1st Cir. 1991), citing Freeman v. Package Machinery Co., 865 F.2d 1331, 1341 (1st Cir. 1988). The plaintiff in an ADEA discrimination suit bears the ultimate burden of proving that his age motivated the employer's decision. Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993). That is, plaintiff's age must have "actually played a role in the employer's decision-making process and had a determinative influence on the outcome." Id.; see also Loeb v. Textron, 600 F.2d 1003, 1011 (1st Cir. 1979) ("Where defendant denies that age was a consideration, the plaintiff must prove that he would not have been discharged "but for" his age, i.e., that age must have been a determinative factor").

If plaintiff cannot produce direct evidence demonstrating that the employer's actions were motivated by age animus, the Courts

Civil 06-2131 (JAG)                                                    21

apply the burden-shifting framework established in McDonnell
Douglas Corp. v. Green, 411 U.S. 792 (1973). The McDonnell Douglas
framework is based principally on circumstantial evidence. Reeves
v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141 (2000);
Suarez v. Pueblo International, Inc., 229 F.3d 49, 53 (1st Cir.
2000); Mesnick v. General Electric Co., 950 F.2d 816, 823 (1st Cir.
1991). Under the McDonnell Douglas framework a plaintiff must
establish a prima facie case of age discrimination by demonstrating
that (1) he or she is within the protected class (over the age of
forty), (2) that his or her job performance was satisfactory to
meet his employer's legitimate expectations, (3) his or her
employer took adverse action against him or her, and (4) that the
employer sought a replacement with roughly equivalent job
qualifications, thus revealing a continued need for the same
services and skills that he had been rendering. Reeves, 530 U.S. at
142; Suarez, 229 F.3d at 53; Mesnick, 950 F.2d at 823; Medina-Munoz
v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 9 (1st Cir. 1990). The
First Circuit found that this method of proof and burden shifting
applies in the ADEA context. Loeb, 600 F.2d at 1010.

Establishing a prima facie case creates a rebuttable
presumption of discrimination. Rodriguez v. Potter, 419 F.Supp.2d
58, 63 (D.P.R. 2006). While the burden of persuasion remains at all
times with the plaintiff, the prima facie case shifts the burden of
production to the employer. Mesnick, 950 F.2d at 823, (citing Texas

Civil 06-2131 (JAG)                                              22

Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)).
"The employer must articulate some legitimate, nondiscriminatory
reason for the employee's rejection . . . This suffices to
discharge petitioner's burden of proof at this stage and to meet
respondent's prima facie case of discrimination." McDonnell
Douglas, 411 U.S. at 802-03. If the employer meets this limited
burden, the presumption vanishes and the plaintiff must adduce
sufficient evidence to demonstrate that age was a motivating factor
in the challenged employment action. Zapata-Matos v. Reckitt &
Coleman, Inc., 277 F.3d 40, 45 (1st Cir. 2002). To do so, plaintiff
must show that the proffered reason is pretextual such that
discriminatory animus can be inferred. Gonzalez v. El Dia, Inc.,
304 F.3d 63, 69 (1st Cir. 2002). "It is not enough for a plaintiff
to merely impugn the veracity of the employer's justification,
[s]he must 'elucidate specific facts which would enable a jury to
find that the reason given is not only a sham, but a sham intended
to cover up the employer's real motive, age discrimination.'"
Mesnick, 950 F.2d at 824 (citing Medina-Munoz, 896 F.2d at 9).

     On the other hand, if plaintiff fails to establish a prima
facie case, "the inference of discrimination never arises."
Mesnick, 950 F.2d at 824; see also, O'Connor, 517 U.S. at 312
(citing Teamsters v. United States, 431 U.S. 324, 358 (1977),
"Prima facie requires evidence adequate to create an inference that
an employment decision was based on an illegal discriminatory

Civil 06-2131 (JAG)                                                23

criterion").

In the present case, we agree with the Magistrate Judge that Plaintiff meets the first three elements of an ADEA claim. Plaintiff is over forty years old, his job performance was at least satisfactory, and he was terminated from his job at Frito Lay. Frito Lay disputes the last element of the claim, to wit, whether the employer sought a replacement with roughly equivalent job qualifications, thus revealing a continued need for the same services and skills that he had been rendering. This Court, however, finds that Plaintiff has presented evidence that his duties were taken over by Hector Sanchez, a fellow Frito Lay employee. Furthermore, Plaintiff furnished evidence that Frito Lay began seeking a replacement a few months, after his discharge, and posted several job announcements. Therefore, this Court concludes that Plaintiff has submitted sufficient evidence to permit a reasonable fact finder to infer that Frito Lay sought a replacement of similar qualifications demonstrating its need for the skills and services that Plaintiff provided. Consequently, we find that Plaintiff has met all the requirements for a prima facie case of ADEA discrimination.

After finding a prima facie case, the Court must evaluate whether Frito Lay has provided a proffered reason for Plaintiff's termination. If Frito Lay meets its burden, then Plaintiff has an opportunity to show the proffered reason is pretextual.

The Magistrate Judge found that Frito Lay was not motivated by age discrimination when it terminated Plaintiff.  Further, the Magistrate stated that Plaintiff's termination was not related to his eligibility for the insurance coverage, but rather because Frito Lay believed that Plaintiff had provided it with fraudulent statements regarding said coverage.  Plaintiff objects to this finding because it contravenes the First Circuit's findings in Velez v. Thermo King de P.R., Inc.,585 F.3d 441 (1st Cir. 2009). In Thermo King, the First Circuit found that "evidence establishing a prima facie case, in combination with evidence of pretext, can be sufficient to defeat summary judgment if a rational factfinder could conclude that unlawful age discrimination was the actual but for cause for the discrimination." Id. at 452. Moreover, the Court stated that a prima facie case, coupled with shifting explanations from the employer, reliance on an ambiguous company policy and "unusually strong evidence of disparate treatment," were enough to overcome the summary judgment obstacle and conclude that a reasonable fact finder could find evidence of pretext. Id.  After viewing the evidence in the light most favorable to Plaintiff, there simply is no evidence of pretext in this case.

Plaintiff argues that Frito Lay's reason for the termination is pretextual because the result of a denial of his insurance claim should have been non payment, not termination.  However, Plaintiff is not taking into consideration that the reason that Frito Lay

provided for the termination was not that Plaintiff did not deserve
coverage but rather the fact that it believed that he gave
fraudulent statements in support of his claim.  Plaintiff argues
that this is evidence of disparate treatment because it was the
first time that Frito Lay hired a private investigator to
investigate such a "straightforward insurance claim," and it was
the first time that Frito Lay fired an employee after denying its
claim.  Nevertheless, Frito Lay states that it was not a
straightforward claim because it found inconsistencies in
Plaintiff's explanation of the accident.  Thus it was entitled to
hire an investigator or use any other method to ascertain the
validity of the claim.  Plaintiff goes on to argue that he was
never confronted with the findings of the private investigator, nor
was he given an opportunity to refute said findings.  However,
Plaintiff does not present any indicating where it states that
Frito Lay has the obligation to provide him with an explanation or
an opportunity to respond or refute said findings.  Plaintiff
continues his argument stating that Frito Lay did not even try to
explain why his claims were singled out from every other insurance
claim.  Nevertheless, Frito Lay did provide an explanation by
stating that Plaintiff's claim was investigated because he provided
them with drastically different stories as to what happened the day
of the incident.  Hence this Court finds that there is no evidence
on the record that Frito Lay's reason for Plaintiff's termination

Civil 06-2131 (JAG)                                                      26

was pretextual.  It follows that a reasonable fact finder could not conclude from the evidence that Frito Lay's reason was pretextual. Consequently, the Court grants summary judgment in favor of Frito Lay on Plaintiff's ADEA claim.

3. <u>Retaliation</u>

The First Circuit has stated that Title VII provides in pertinent part that it is unlawful for "an employer to discriminate against any of his employees . . . because s/he has opposed any practice made an unlawful employment practice by this subchapter, or because s/he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

In order to have a valid claim of retaliation Plaintiff must show that "(1) he engaged in protected activity; (2) he suffered some materially adverse action; and (3) the adverse action was causally linked to his protected activity." <u>Dixon v. Int'l Bhd. of Police Officers</u>, 504 F.3d 73, 81 (1st Cir. 2007).

Plaintiff argues that he participated in two protected activities.  The first protected activity was his refusal to stop performing ride alongs in his private vehicle after Alexander Pagan told him that it would no longer be allowed.  The second protected activity is his complaints regarding increasing hostilities and harassment against him.  Plaintiff argues that this Court should infer retaliation because his complaints and oppositions lead Frito

Civil 06-2131 (JAG)                                                27

Lay to pressure him to resign.  He goes on to state that his refusal to resign led Frito Lay to summarily fire him.

Nevertheless, even if the Court were to find that Plaintiff meets the first two requirements of retaliation, he has not demonstrated that there is any connection between his termination and his alleged protected activity.  We find that Frito Lay's reason for termination is legitimate and not pretextual.  In conclusion, Plaintiff has not presented sufficient evidence to allow a reasonable fact finder to conclude that he has a valid claim of retaliation.  Consequently, this Court grants summary judgment in favor of Frito Lay on Plaintiff's claim of retaliation.

4. Hostile Work Environment

As the First Circuit stated in Valentin-Almeyda, a Plaintiff can prove "unlawful discrimination by showing that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Valentin-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006)(citations omitted).  Further, the Court states that the conditions should be "sufficiently severe or pervasive," to create a hostile work environment. Id. (citing O'Rourke v. City of Providence, 235 F.3d 713 (1st Cir. 2001)).  Factors to consider include, the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or

Civil 06-2131 (JAG)                                                    28

a mere offensive utterance; and whether it unreasonably interferes
with an employee's work performance." Harris v. Forklift Sys., 510
U.S. 17, 23 (1993).

     The Magistrate judge found that Plaintiff provided scant
evidence that his work environment at Frito Lay could reasonably be
considered hostile because those instances were not "physically
threatening or humiliating, and amount to nothing more than
offensive utterances." Id. Plaintiff objects to the Magistrate
weighing in credibility considerations.  He argues that Frito Lay
did not set forth any testimonial or documental evidence that
contests in any way Plaintiff's claims as to the hostile work
environment he endured.  However, this Court agrees with the
Magistrate Judge that there is no genuine issue of material fact as
to Plaintiff's hostile work environment claim. Plaintiff admits
that the hostilities at work were disguised as "good fun" or
"teasing" but that he was afraid they would increase if he
complained.  Therefore, the Court finds that a reasonable jury
could not conclude that Plaintiff suffered sexual harassment in the
form of a hostile work environment.  Thus we grant summary judgment
in favor of Frito Lay on Plaintiff's hostile work environment
claim.

Civil 06-2131 (JAG)                                                    29

## CONCLUSION

For the reasons stated above, this Court **GRANTS** Frito Lay's Motion for Summary Judgment on Plaintiff's ADEA, ADA, retaliation and hostile work environment claims with prejudice.  Plaintiff's supplemental claims under Puerto Rico law are also dismissed should be without prejudice.


IT IS SO ORDERED.

In San Juan, Puerto Rico, this 21st day of June, 2010.


<u>S/ Jay A. Garcia-Gregory</u>
JAY A. GARCIA-GREGORY
United States District Judge